UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INTEGRATED FACILITIES CONSTRUCTION CORP., <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH OF MASSACHUSETTS DIVISION OF CAPITAL ASSET MANAGEMENT AND MAINTENANCE, CAROL W. GLADSTONE, *in her individual and official capacities*, CHARLES W. KELSEY, III, *in his individual and official capacities*, KATHLEEN TWOMEY, *in her individual and official capacities*, and MATTHEW H. RYAN*, in his individual and official capacities*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 21-cv-11607-AK |

## **MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

Plaintiff Integrated Facilities Construction Corp. ("IFCC") brings this action against the Commonwealth of Massachusetts Division of Capital Asset Management and Maintenance ("DCAMM") and four DCAMM employees, Carol W. Gladstone ("Gladstone"), Charles W. Kelsey, III ("Kelsey"), Kathleen Twomey ("Twomey"), and Matthew H. Ryan ("Ryan"), in their individual and official capacities. IFCC alleges it was effectively, or de facto, debarred from bidding on state construction contracts in violation of Fourteenth Amendment due process and equal protection guarantees. IFCC seeks monetary damages, an injunction, and a declaratory

judgment that the statutory and regulatory scheme concerning the evaluation and certification of public construction contractors is unconstitutional.  The defendants have moved to dismiss the action in its entirety.  [Dkt. 15].  For the reasons that follow, the defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

I. Background

Unless otherwise noted, the facts are presented as alleged in IFCC's complaint.  [See Dkt. 1 ("Complaint")].  Massachusetts has established a comprehensive statutory scheme governing public construction contracts.  See generally Mass. Gen. Laws ch. 149.  That framework requires contractors who submit bids on public construction contracts valued at more than $150,000 to include a Certificate of Eligibility as part of its submissions.  Id. § 44D(1)(a).  DCAMM, the state agency that oversees public construction, makes preliminary and final decisions granting or denying Certificates of Eligibility.  Id. § 44D(1)-(4).  DCAMM will issue a Certificate of Eligibility only if a contractor demonstrates that it is "competent and responsible" based on a number of factors, including financial responsibility, number of projects completed, management and supervisory personnel, and past performance on public projects.  810 Mass. Code Regs. § 4.04.  Certificates of Eligibility are effective for one year from the date of issue.  Mass. Gen. Laws ch. 149, § 44D(3).  Contractors who disagree with DCAMM's preliminary decision may submit further information with a request for reconsideration, and contractors who disagree with DCAMM's final decision may appeal to the Massachusetts Attorney General, who must investigate and issue a written decision.  Id. at § 44D(4).  After the Attorney General renders her decision, DCAMM or the contractor may seek remedies at law.  Id.

IFCC first received a Certificate of Eligibility in 2016.  [Complaint at ¶ 37].  IFCC completed more than $13,000,000 in contracts for which a Certificate of Eligibility was required

from 2016 to 2019.  [Id. at ¶ 38].  In 2019, however, IFCC's application for renewal was denied.  [Id. at ¶ 78].  The reason for this denial was two-fold.  First, DCAMM concluded IFCC had received failing scores on two of its project evaluations.[1]  [Id. at ¶ 82].  Second, DCAMM concluded that one of the private project evaluations IFCC submitted with its application was fraudulent.  [Id. at ¶ 81].  As part of its previous Certificate of Eligibility applications, IFCC had relied on an evaluation for a private construction project for an entity called 60 Tupelo Realty Trust (the "Tupelo Project").  [Id. at ¶¶ 60-67, 72].  The evaluation was signed by "Cynthia Costinden," and a project spreadsheet submitted to DCAMM each year similarly listed "Cynthia Costinden" in connection with the Tupelo Project.  [Id. at ¶¶ 71-72].  Prior to submitting its 2019 renewal, IFCC changed the spelling to "Cynthia Kostinden" in the project spreadsheet.  [Id.].  Cynthia Kostinden is the wife of Thomas Kostinden, an IFCC employee.  [Id. at ¶ 75].  IFCC withdrew its application when DCAMM inquired about the change.  [Id. at ¶ 73].

Months later, IFCC submitted another Certificate of Eligibility application, including a replacement evaluation signed by Ms. Kostinden, and sent an email stating that Mr. Kostinden told IFCC that he or someone on his behalf had filled out the prior evaluation and IFCC was unaware of the name misspelling prior to 2019.  [Id. at ¶¶ 75-77].  DCAMM still concluded that the original Tupelo Project evaluation was fraudulent; that IFCC was involved in the preparation and submission of the original Tupelo Project evaluation; and that IFCC willfully supplied materially false information to obtain certification to bid on public work.  [Id. at ¶ 81].  DCAMM denied IFCC's application, noting that IFCC had to wait a minimum of one year to reapply.  [Id. at ¶ 83].  Although IFCC sent a letter objecting to the denial of its Certificate of Eligibility, it did not take further action to appeal DCAMM's final determination.  [Id. at ¶ 84].

---

[1] Every public agency must submit project evaluations after contractors have completed building projects under its control, which are kept in contractors' evaluation files.  Mass. Gen. Laws ch. 149, § 44D(7).

IFCC submitted another application for a Certificate of Eligibility on February 17, 2021. [Id. at ¶ 96]. DCAMM denied this application based on the Tupelo Project evaluation and four failing project evaluations, two of which were submitted after DCAMM denied IFCC's 2019 request for certification. [Id. at ¶¶ 89, 97-99]. IFCC timely objected to DCAMM's preliminary determination, asked for a meeting, and requested reconsideration. [Id. at ¶ 100]. IFCC met with DCAMM, Twomey, and Kelsey shortly thereafter, and DCAMM later issued a final determination denying IFCC's application. [Id. at ¶ 101-103]. IFCC appealed to the Attorney General. [Id. at ¶¶ 107-110]. In connection with that appeal, the defendants stated that they chose to consider the Tupelo Project evaluation as a reason to deny IFCC's certification applications through at least 2023 and that the existence of three failing evaluations during the previous five years would mandate denial of IFCC's certification applications through 2024. [Id. at ¶ 108]. The Attorney General denied the appeal in September 2021. [Id. at ¶ 111]. IFCC has since filed suit in state court, seeking to reverse DCAMM's decision. See Integrated Facilities Construction Corp. v. DCAMM, No. 2184CV02253 (Suffolk Sup. Ct.).

IFCC brings a due process claim pursuant to 42 U.S.C. § 1983. IFCC alleges the defendants deprived IFCC of its property and liberty interests in bidding and working on public contracts by imposing a de facto debarment without due process of law ("Count I"). [Complaint at ¶¶ 126-133]. IFCC further asserts, pursuant to 42 U.S.C. §§ 1981, 1983, that the defendants have violated its equal protection rights by intentionally treating IFCC differently from others similarly situated ("Count II"). [Id. at ¶¶ 134-39]. IFCC also seeks a declaratory judgment invalidating Mass. Gen. Laws ch. 149, § 44D, and the regulations promulgated thereunder, and an injunction prohibiting the enforcement thereof ("Count III"). [Id. at ¶¶ 140-44]. The defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). If the facts alleged are sufficient to state a cause of action, the motion to dismiss must be denied. Back Beach Neighbors Comm. v. Town of Rockport, 535 F. Supp. 3d 57, 62 (D. Mass. 2021). Dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is "similar to that accorded a dismissal for failure to state a claim pursuant to" Federal Rule of Civil Procedure 12(b)(6). Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

## III. Discussion

IFCC has sued DCAMM, a state agency, and four individuals in their individual and official capacities, pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person" acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia" who subjects or causes to subject someone "to the

5

deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the injured party. 42 U.S.C. § 1983. An individual asserting a Section 1983 claim must show that the challenged conduct is "attributable to a person acting under color of state law" and that the conduct was a "denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997); see Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation omitted) (explaining that Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred"). The defendants argue that the Eleventh Amendment bars IFCC's claims against DCAMM and the individual defendants in their official capacities. [Dkt. 16 at 8-9]. The defendants also maintain that IFCC has failed to state a claim for relief for due process and equal protection violations and that, regardless, the individual defendants are entitled to qualified immunity. [Id. at 10-20].

### A. Eleventh Amendment

The Eleventh Amendment bars suits by citizens against the state or state agencies unless a state has waived its immunity or Congress has overridden it. Brait Builders Corp. v. Mass. Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011) (citations omitted). As an initial matter, IFCC agrees that dismissal of DCAMM is proper. [Dkt. 27 at 10]. And Eleventh Amendment jurisprudence dictates exactly that. See Brait, 644 F.3d at 11 (noting that claims against DCAMM are "barred by the Eleventh Amendment," which prohibits "federal suits by citizens against the state or state agencies" (quoting O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000)). The Court therefore grants the defendants' motion to dismiss as to DCAMM.

The Eleventh Amendment also bars any claims for monetary damages brought pursuant to Section 1983 against individuals in their official capacities. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their

official capacities are 'persons' under § 1983."); see also Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005). IFCC effectively concedes this. [See Dkt. 27 at 10-12]. To the extent IFCC asserts any official capacity claims for damages, those claims are dismissed.[2] See Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." (citations omitted)). The Eleventh Amendment does not, however, bar prospective injunctive relief against defendants in their official capacities, nor does it outlaw injunctive or monetary relief against the defendants in their individual capacities. Redondo-Borges, 421 F.3d at 7; see Will, 491 U.S. at 71 n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the state.'" (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985))). All counts in the complaint seek either prospective injunctive relief or monetary damages against the remaining defendants in their individual capacities. As such, the Eleventh Amendment does not require wholesale dismissal of IFCC's claims against the individual defendants.

### B. Counts I and III:  Due Process

The defendants maintain that IFCC has not articulated a cognizable liberty or property interest and that the procedures provided by state law are adequate. [Dkt. 16 at 10-15; Dkt. 30 at 2-8]. The defendants also assert that they are entitled to qualified immunity and therefore cannot be held liable in their individual capacities. IFCC counters that the denial of its application for a Certificate of Eligibility resulted in a de facto debarment implicating a liberty interest sufficient to trigger due process protections. [Dkt. 27 at 12-16]. IFCC also argues that it has alleged facts

---

[2] IFCC specifies in Count I that it seeks monetary damages against the defendants in their individual capacities, but it does not provide the same clarity in Count II. [See Complaint at 21-22].

sufficient to establish a plausible claim that it was not afforded meaningful process.[3] [Id. at 16-24]. To survive dismissal, a plaintiff must plead facts demonstrating that (1) the plaintiff possesses a protected property or liberty interest and (2) the defendants deprived the plaintiff of that right "without constitutionally adequate process." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006) (citation omitted).

### 1. Property or Liberty Interest

Although IFCC briefly states in its complaint that it has a "liberty and/or property interest in bidding on contracts for the Commonwealth," IFCC argues in its briefs solely that it has a liberty interest. [See, e.g., Complaint at ¶ 127]. The Court limits its examination in kind.[4] While the First Circuit has yet to determine whether the de facto debarment of a government contractor under Mass. Gen. Laws ch. 149, § 44D, necessarily implicates a liberty interest, it has probed related issues. In Redondo-Borges v. United States Department of Housing and Urban Development, the First Circuit examined whether the denial of a "responsible bidder" status implicated a property interest (it did not) and noted that the "case might have taken a different turn" had the plaintiffs argued a claim premised on a liberty interest. 421 F.3d at 8 n.3. The First Circuit refrained from answering whether the plaintiffs had a liberty interest, explaining that "cases that support the existence of a protected liberty interest are relevant only to the plaintiffs'

---

[3] Besides a cursory reference to substantive due process, the complaint fails to advance a substantive due process claim, and IFCC does not rebut the defendants' substantive due process arguments. [See Complaint at ¶¶ 129, 132; Dkt. 27 at 12-24]. As such, the Court treats IFCC's due process claim as a procedural one.

[4] The First Circuit has explained that a plaintiff's "dashed hopes of receiving future government work, without more, cannot yield a constitutionally protected property interest," even if they stem from DCAMM's denial of the Certificate of Eligibility. Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 9 (1st Cir. 2005). That is, the plaintiff does "not have a strong enough claim of entitlement to a" Certificate of Eligibility to "create a constitutionally protected property interest." Id. at 10. While IFCC's alleged debarment adds another dimension to this inquiry, see Brait Builders Corp. v. Mass. Div. of Capital Asset Mgmt., 644 F.3d 5, 12 n.6 (1st Cir. 2011), the Court need not resolve that issue here, as IFCC argues only that it has a liberty interest.

8

effective debarment claim, which, no matter the interest raised, has been pleaded without the necessary factual underpinnings." Id.  The First Circuit has, however, recognized that "[i]n the context of government procurement contracts, a liberty interest requiring due process protection arises" when a "company is barred from the procurement process, or eliminated from it, because of charges of fraud or dishonesty made without an opportunity for a hearing on those charges." Smith & Wesson v. United States, 782 F.2d 1074, 1081 (1st Cir. 1986).  Meanwhile, courts in other circuits recognize a liberty interest in debarment regardless of charges of dishonesty or fraud.  See Trifax Corp. v. Dist. of Columbia, 314 F.3d 641, 643-44 (D.C. Cir. 2003) (explaining that "formally debarring a corporation from government contract bidding constitutes a deprivation of liberty that triggers the procedural guarantees of the Due Process Clause" (citation omitted)); Phillips v. Mabus, 894 F. Supp. 2d 71, 81 (D.D.C. 2012) ("*De facto* debarment occurs when a contractor has, for all practical purposes, been suspended or blacklisted from working with a government agency without due process, namely, adequate notice and a meaningful hearing."  (citations omitted)).  Under either standard, IFCC has alleged facts sufficient to survive dismissal.

Without a Certificate of Eligibility, IFCC cannot bid on government contracts.  IFCC alleges the defendants denied its application for a Certificate of Eligibility in 2019, citing the "forged" and "fraudulent" Tupelo Project evaluation as one of the reasons for denial.  [E.g., Complaint at ¶ 81].  IFCC also claims that its 2021 application for a Certificate of Eligibility was rejected on the same grounds, in addition to several negative project evaluations mandating denial.  [E.g., id. at ¶ 104].  Moreover, IFCC asserts that the defendants stated, in writing, that they will consider the Tupelo Project evaluation as a reason to deny IFCC's applications through at least 2023 and that the existence of failing evaluations mandates denial of IFCC's Certificate

of Eligibility through 2024. [Id. at ¶ 108]. In other words, as pleaded, IFFC's application for a Certificate of Eligibility, and therefore its ability to bid on government contracts, has been and will be denied from 2019 through 2024, in part because of what the defendants stated was fraudulent behavior. IFCC has thus pleaded the "relevant factual underpinnings" of a liberty interest implicating due process under either standard—debarment tied to charges of fraud or de facto debarment alone.[5] See Redondo-Borges, 421 F.3d at 8 n.3.

### 2. Adequate Process

Because IFCC has alleged that the denial of the Certificate of Eligibility gives rise to a liberty interest, the next question is whether IFCC has pleaded facts sufficient to demonstrate that it was not afforded adequate process. Due process is "flexible" and requires "procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Generally, this requires at least notice and an opportunity to be heard. Gorman v. Univ. of R.I., 837 F.2d 7, 12 (1988). IFCC alleges multiple deficiencies with the process it received, including issues with the meeting it had with the defendants (which was granted only at IFCC's request and not as a matter of right), investigative deficiencies, biased decisionmakers, and lack of procedures for information gathering. [E.g., Complaint at ¶¶ 28-29, 31-35, 100-01]. IFCC also avers that the post-deprivation appeal to the Attorney General is meaningless, as the defendants are not bound by that decision, and certiorari is not an appropriate or effective remedy. [See id. at ¶¶ 32, 107-10]. These measures, IFCC claims, are significantly less than those provided for formal debarment proceedings pursuant to Mass. Gen. Laws ch. 29, § 29F, which requires, at minimum, an

---

[5] The Court does not, at this time, determine whether a denial of a Certificate of Eligibility is, in fact, a de facto debarment, nor whether a de facto debarment necessarily implicates a liberty interest. It merely finds that IFCC has pleaded facts sufficient to survive dismissal.

adjudicatory or quasi-judicial hearing. [Id. at ¶ 36].  As alleged by IFCC, the denial of a Certificate of Eligibility may result in a de facto debarment, and the risk of an erroneous deprivation of due process is heightened by the regulatory scheme's mandatory denial of applications involving fraud or dishonesty and for those contractors receiving three or more failing project evaluations, which can span several years.  See 810 Mass. Code Regs. 4.04(6), (8).  These allegations, taken together, are sufficient to state a claim that IFCC was denied due process and that the statutory and regulatory scheme is constitutionally deficient.  See, e.g., Myers & Myers, Inc., 527 F.2d 1252, 1259 (2d Cir. 1975) (noting that "[d]enial of notice and hearing before debarment would 'give rise to serious constitutional issues'" (citation omitted)).

### 3. Qualified Immunity

The defendants argue that even if IFCC has pleaded a viable due process claim, they are entitled to qualified immunity from any claim against them in their individual capacities.  Qualified immunity provides that "government officials performing discretionary functions" are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The Court must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation."  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)).  To answer the second question, the Court must evaluate whether the law was "sufficiently clear" such that "every reasonable official would understand that what he is doing is unlawful."  Eves v. LePage,

927 F.3d 575, 583 (1st Cir. 2019) (citation and internal quotation marks omitted). Courts need not follow the two-step analysis sequentially. Maldonado, 568 F.3d at 270.

The second prong of the qualified immunity inquiry is decisive here. Although the First Circuit has stated that debarment based on charges of fraud or dishonesty implicates a contractor's liberty interest, see Smith & Wesson, 782 F.2d at 1801, it is unclear whether a de facto debarment implicates a liberty interest requiring procedural due process protections, see, e.g., Redondo-Borges, 421 F.3d at 8, n.3 (declining to reach the question of whether a de facto debarment implicates a liberty interest). Moreover, at the time of the alleged due process violation (and now), it was not clear that the denial of a Certificate of Eligibility, which is applied for on a yearly basis, could be considered debarment. See Eves, 927 F.3d at 584 (explaining that there was "no 'controlling authority' or even a 'consensus of cases of persuasive authority' that would lead to the conclusion that [the defendant] can be denied immunity" (citation omitted)). And even if it were, it was not clear that the state-sanctioned process afforded IFCC, which included a request for reconsideration, appeal to the Attorney General, and certiorari review, was insufficient. The defendants are therefore entitled to qualified immunity.

Qualified immunity protects public officials from Section 1983 suits for damages. It does not, however, apply to declaratory or injunctive relief. See Battista v. Clarke, 645 F.3d 449, 452 (1st Cir. 2011). As such, qualified immunity does not require dismissal of Count III, which seeks declaratory relief related to the constitutionality of the statutory scheme. Count I, however, requests damages in the defendants' individual capacities and "such other relief as this Court deems equitable, just, and appropriate." [Complaint at 21]. Qualified immunity dictates dismissal of Count I as it pertains to damages in the defendants' individual capacities. IFCC seeks to save Count I by asking the Court to construe Count I's reference to "such other relief as

this Court deems equitable, just, and appropriate" as seeking prospective, equitable relief against the defendants in their official capacities.  [Dkt. 27 at 11-12; see Complaint at 21].  IFCC, however, fails to specify the prospective, equitable relief it seeks, and the Court will not interpret Count I as requested.  Instead, the Court will allow IFCC leave to amend Count I so as to add a specific request for prospective, equitable relief against the defendants.

For all of these reasons, the defendants' motion to dismiss is granted as to Count I, though IFCC may amend Count I in its complaint to include a specific request for prospective, equitable relief, and denied as to Count III.

### C. Count II: Equal Protection

IFCC brings a class-of-one equal protection claim against the defendants.  [See Complaint at ¶¶ 134-39].  The equal protection guarantee of the Fourteenth Amendment prohibits the state from "deny[ing] any person within its jurisdiction the equal protection of the laws" and has been interpreted to require that "all persons similarly situated should be treated alike."  Pagán v. Calderón, 448 F.3d 16, 34 (1st Cir. 2006) (citations omitted).  The First Circuit has urged caution in allowing class-of-one equal protection claims based on the discretionary grant of government benefits.  See id. ("Where applicable state law vests the decisionmaker with discretionary authority to award or withhold a state benefit, a plaintiff who grounds an equal protection claim on the denial of that benefit faces a steep uphill climb."); Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 44-45 (1st Cir. 1992) ("If disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court.").  A plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis

13

for the difference in treatment." Buchanan v. Maine, 469 F.3d 158, 177 (1st Cir. 2006) (citation omitted). A plaintiff must also plead facts establishing a "gross abuse of power, invidious discrimination or fundamentally unfair procedures." Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000) (explaining that "an arbitrary denial of a permit in violation of state law—even in bad faith—does not rise above the constitutional threshold for equal protection" and there is "a marked difference between the inevitable misjudgments, wrongheadedness, and mistakes of local government bureaucracies and the utterly unjustified, malignant, and extreme actions of those who would be parochial potentates").

IFCC alleges it was treated differently than similarly situated contractors Brait Builders Corporation ("Brait") and Bonomo Tile ("Bonomo"). [Complaint at ¶¶ 117-19]. In particular, IFCC maintains that Brait was denied a Certificate of Eligibility for one year for falsifying the value of a project and Bonomo was denied a Certificate of Eligibility for eight months for submitting a falsified Certificate of Eligibility to awarding authorities to whom it was bidding. [Id. at ¶¶ 117-18]. Both of these rejections occurred more than a decade before IFCC's denial. [Id.]. Even assuming these allegations are sufficient to establish that IFCC was treated differently than other contractors, IFCC has not pleaded facts indicating that Brait and Bonomo were similarly situated. IFCC has not alleged that either Brait or Bonomo had any failing project evaluations attached to the denied application, unlike IFCC, which had up to four, nor does IFCC claim that the defendants believed Brait or Bonomo had provided materially false information on applications for consecutive years, as they believed IFCC did. Because both of these factors played vital roles in the defendants' decision to deny IFCC's Certificate of Eligibility, IFCC has failed to plead facts demonstrating that IFCC, Brait, and Bonomo are similarly situated "to a high degree." Rectrix Aerodrome Ctrs., Inc. v. Barstable Mun. Airport Comm'n, 610 F.3d 8, 16

(1st Cir. 2010). Moreover, IFCC agreed to dismiss DCAMM from the suit and has not alleged that any of the individual defendants were involved in the Brait and Bonomo decisions. As such, IFCC has not sufficiently pleaded that the individual defendants engaged in disparate treatment with respect to IFCC, Brait, and Bonomo. See Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594-95 (1st Cir. 2011) ("[A]n adequate complaint must include not only a plausible claim but also a plausible defendant. Yet there is nothing in the complaint beyond raw speculation to suggest that *the named defendants* participated—either as perpetrators or accomplices—in the [alleged injustice]."); Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999) ("It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions.").

For all these reasons, the defendant's motion is granted as to Count II, and the claim is dismissed in its entirety.

### IV.     Conclusion

For the foregoing reasons, the defendants' motion to dismiss [Dkt. 15] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Count I, though the plaintiff may amend Count I of the complaint to include a specific request for prospective, equitable relief, **GRANTED** as to Count II, and **DENIED** as to Count III.

**SO ORDERED.**

Dated: July 20, 2022                                /s/ Angel Kelley
                                                    Hon. Angel Kelley
                                                    United States District Judge