UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTEGRATED FACILITIES CONSTRUCTION CORP.<br>        Plaintiff | |
| v. | Civil Action No. 21-11607 |
| CAROL W. GLADSTONE, CHARLES W. KELSEY III, KATHLEEN TWOMEY, and MATTHEW H. RYAN, all in their official capacities as officers or employees of the Commonwealth of Massachusetts Division of Capital Asset Management and Maintenance<br>        Defendants | Leave to File Granted<br>September 29, 2022 |

**FIRST AMENDED COMPLAINT**

This is a civil action for declaratory and injunctive relief against Defendants Carol W. Gladstone, Kathleen Twomey, Charles W. Kelsey III and Matthew H. Ryan, in their official capacities as officers or employees of the Commonwealth of Massachusetts Division of Capital Asset Management and Maintenance.

Plaintiff Integrated Facilities Construction Corp. ("IFCC") alleges that the Defendants have denied IFCC a liberty interest in bidding public construction contracts and have further imposed an actual and/or a de facto debarment of IFCC without due process of law. Plaintiff asks this Court determine the Defendants' actions described herein to be in violation of 42 U.S.C. § 1983 and the Due Process clause of the Fifth and Fourteen Amendments to the United States Constitution.

In connection therewith, IFCC also seeks an order declaring M.G.L. c. 149, § 44D and the regulations thereunder unconstitutional on their face, in violation of the rights of the Plaintiff and similarly situated persons to due process of law, insofar as § 44D and the regulations

thereunder mandate and/or permit the deprivation of the liberty interest in bidding public building contracts without a meaningful right to be heard and without meaningful resort to appeal.

**PARTIES**

1.      Plaintiff Integrated Facilities Construction Corp. ("IFCC") is a Massachusetts corporation having a usual place of business at 92 High Street, Suite 23, Medford, Middlesex County, Massachusetts 02155.

2.      Defendant Carol W. Gladstone, named her official capacity, is the Commissioner of DCAMM, and maintains a primary office location at One Ashburton Place, 15th Floor, Boston, Suffolk County, Massachusetts 02108.  Upon information and belief, Ms. Gladstone is the senior-most official at DCAMM.

3.      Defendant Charles W. Kelsey III, named in his official capacity, is the DCAMM Director of Access & Opportunity, and maintains a primary office location at One Ashburton Place, 15th Floor, Boston, Suffolk County, Massachusetts 02108.  Upon information and belief, Mr. Kelsey reports to and is supervised by Ms. Gladstone, and supervises Ms. Twomey.

4.      Defendant Kathleen Twomey, named in an official capacity, is the Deputy Director of Contractor Certification at DCAMM, and maintains a primary office location at One Ashburton Place, 15th Floor, Boston, Suffolk County, Massachusetts 02108.  Upon information and belief, Ms. Twomey reports to and is supervised by Mr. Kelsey or Ms. Gladstone, and supervises Mr. Ryan.

5.      Defendant Matthew H. Ryan, named in his official capacity, is a Compliance Officer at DCAMM, and maintains a primary office location at One Ashburton Place, 15th Floor,

Boston, Suffolk County, Massachusetts 02108.  Upon information and belief, Mr. Ryan reports to and is supervised by Ms. Twomey.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution and laws of the United States.

7.      This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343; and attorneys' and expert fees under U.S.C. § 1988.

8.      Venue is proper in the United States District Court for the District of Massachusetts under 28 U.S.C., § 1391 because all parties are domiciled within Massachusetts and all of the events giving rise to the claims alleged herein occurred in Massachusetts.

9.      Venue in the Eastern Division is proper because, upon information and belief, all of Defendants are domiciled within the Eastern Division and the case arises in Suffolk County, Massachusetts, which is located in the Eastern Division.

## FACTS

10.      IFCC's principal, Rick Magliozzi, has extensive experience in public construction including as a contractor, project manager, and consultant.

11.      Mr. Magliozzi incorporated IFCC in June 2014 for the purpose of performing construction contracts, and in particular, public construction contracts.

12.      Since its incorporation, IFCC has successfully completed more than $26,000,000.00 in construction contracts.

## THE STATUTORY AND REGULATORY SCHEME

13.     Pursuant to M.G.L. c. 149, § 44D, in order to bid on a contract estimated to cost more than $150,000.00 for the construction, reconstruction, installation, demolition, maintenance or repair of any building, let to bid by a department, agency, board, commission, authority, or other instrumentality of the Commonwealth of Massachusetts or political subdivision of the Commonwealth of Massachusetts, the prospective bidder must hold a "Certificate of Eligibility" issued by DCAMM.

14.     M.G.L. c. 149, § 44D and 810 C.M.R. 4.01 et seq. establish procedures governing DCAMM's approval or rejection of a contractor's application for a Certificate of Eligibility.

15.     DCAMM publishes guidelines that it purports to follow in considering applications for Certificates of Eligibility (the "Guidelines").

16.     M.G.L. c. 149, § 44D provides that among the various criteria to be considered by DCAMM in determining whether or not to issue a Certificate of Eligibility are "the record of the applicant's performance including, where available, written evaluations of the applicant's performance on public and private jobs over the past five years…"

17.     M.G.L. c. 149, § 44D, requires that individual project evaluations "shall be completed by every public agency... upon completion of a building project… and submitted to [DCAMM] for the contractor's qualification file."

18.     M.G.L. c. 149, § 44D(7) mandates that project evaluations be submitted to DCAMM by project owners within 70 days of the completion of a project, and that any public agency that fails to meet that time frame "shall be ineligible for the receipt of any public funds disbursed by the Commonwealth for the purposes of any public buildings or public works projects."  This penalty has never actually been imposed despite project owners regularly submitting evaluations well after the 70-day deadline.

19.      M.G.L. c. 149, § 44D requires DCAMM to develop a standard contractor evaluation form for project owners to complete and submit to DCAMM.

20.      At all relevant times, DCAMM's standard contractor evaluation form required project owners to rate the contractor's performance as "unacceptable" "poor" "satisfactory" "very good" or "excellent" in eight categories.  Each of the worded options are associated with a numerical score for the category.

21.      DCAMM's standard contractor evaluation form expressly directs that the evaluator need not provide any explanation if the rating in a category is "satisfactory" or greater.

22.      Scores of "satisfactory" in every category yield a score of 80.

23.      Upon information and belief, individual project evaluations, in general and in the case of the specific evaluations discussed below, do not constitute a valid or reliable measure of a contractor's performance because, *inter alia*, the evaluation process permits evaluator bias to be incorporated into the evaluation, and DCAMM furnishes insufficient or nonuniform training to project owners concerning the project evaluation process so as to preclude the evaluations from having valid and reliable outcomes.

24.      M.G.L. c. 149, § 44D provides that a contractor may issue a rebuttal to a single project evaluation.

25.      DCAMM's Guidelines at Section III.A.2.(h) provide that "rebuttals shall have no effect on either the content or the rating scores documented on the evaluation form, unless it can be clearly demonstrated by the applicant that the evaluation submitted should be deemed unreliable, and DCAM makes the determination that the evaluation is unreliable."

26.     Upon information and belief, DCAMM has never published any information to anyone concerning criteria considered by DCAMM to determine whether an evaluation is unreliable, or whether DCAMM has ever determined an evaluation to be unreliable.

27.     In regard to a rebutted project evaluation, DCAMM's published position, including in the Massachusetts Attorney General proceedings referenced herein below, is that DCAMM is not required to do anything to determine reliability, and will not disregard a duly rebutted evaluation but will simply attach a contractor's rebuttal to the evaluation and place it in the contractor's file, and will consider that evaluation in reviewing a contractor's Application for a Certificate of Eligibility.   Namely, DCAMM has stated that:

     a.  "DCAMM is not required to follow-up with Awarding Authorities to verify statements certified in evaluations."

     b.  "DCAMM's statutory mandate does not permit it to function in the role of a finder of fact. As such, DCAMM did not, and does not, attempt to seek out which party might have the better argument on disputed facts."

     c.  "It is clear in the statute, M.G.L. Chapter 149, § 44D(7), the 'remedy' is to attach a contractor's rebuttal to the evaluation, not to find the evaluation unreliable."

28.     Pursuant to 810 C.M.R. 4.04(8)(a), rejection of the contractor's application for a Certificate of Eligibility is mandatory if a contractor receives three or more evaluations having scores below 80 within the five years preceding the application.

29.     Pursuant to 810 C.M.R. 4.07 and DCAMM's Guidelines at III.B.1(b), an average project rating of 80 or higher is a mandatory condition of certification.

30.     M.G.L. c. 149, § 44D(4) provides the following so-called appeal process that in the event a contractor's application for a Certificate of Eligibility is denied for three failing evaluations or otherwise:

> Any applicant aggrieved by the final determination of the division may appeal in writing to the attorney general within five business days of receipt of final notice thereof. Within thirty calendar days of such appeal, the attorney general shall investigate the matter and issue a written decision. The attorney general may institute and prosecute proceedings in the superior court to enforce the provisions of this section on the same terms as set forth in section forty-four H. Following such decision by the attorney general, or failure to render a decision within the thirty-day period, either the division or the applicant may seek remedies at law.

31.     The Massachusetts Attorney General has declined, in every case, to institute or prosecute proceedings in the Superior Court to enforce its decisions finding that a contractor's application for a Certificate of Eligibility was improperly denied.

32.     Under Massachusetts law, Attorney General investigations under M.G.L. c. 149, § 44D(4) and 44H are not administrative proceedings or adjudicatory proceedings under the Uniform Administrative Procedure Act, and carry no weight in the evidentiary sense.

33.     Under M.G.L. c. 149, § 44D, there is no meaningful review or appeal process as concerns one or more failing project evaluations.

34.     Under M.G.L. c. 149, § 44D, there is no meaningful review or appeal process as concerns a denial of a contractor's application for a Certificate of Eligibility.

35.     The process by which DCAMM may deny a contractor the right to bid on public construction projects under M.G.L. c. 149, § 44D is in stark contrast to the process and limitations imposed upon DCAMM by M.G.L. c. 29, § 29F, which similarly permits DCAMM to debar a contractor from bidding on public contracts;  That process includes an adjudicatory or quasi-judicial hearing and the limitations provide that any debarment must be for a reasonable

and specified period of time commensurate with the seriousness of the offense or failures in performance.

## IFCC'S DCAMM HISTORY

36.    IFCC was first issued a Certificate of Eligibility by DCAMM in 2016.

37.    From 2016 through 2019, IFCC successfully performed more than $13,000,000.00 in contracts for which a Certificate of Eligibility was required.

## THE HURLEY EVALUATION

38.    In 2017, IFCC performed a contract directly for DCAMM called the Hurley Building Toilet Room Renovations (the "Hurley Project"), which project was managed by Jason Penney of DCAMM.

39.    The end user took occupancy and IFCC achieved substantial completion of the Hurley Project on September 30, 2017, approximately six (6) weeks ahead of schedule and for approximately $100,000.00 less than DCAMM's engineer's pre-bid construction cost estimate.

40.    On May 14, 2018, Mr. Penney and DCAMM Deputy Director Paul Ford submitted a project evaluation to DCAMM pursuant to M.G.L. c. 149, § 44D(7) (the "Hurley Evaluation"), giving IFCC a failing score of 70.

41.    The Hurley Evaluation was submitted more than 70 days after final completion of the Hurley Project.

42.    Upon information and belief, Mr. Penney issued IFCC a failing project evaluation strictly due to personal malice against Mr. Magliozzi developed by Mr. Penney during the course of the Hurley Project.

43.     By letters dated May 15, 2018 and August 27, 2018, IFCC duly rebutted the Hurley Evaluation (the "Hurley Rebuttals") with facts establishing that the Hurley Evaluation was unreliable.

44.     On July 20, 2018 IFCC President Rick Magliozzi met with DCAMM Director of Small Projects, Jack Kelleher, to discuss the Hurley Evaluation.  At this meeting, Mr. Kelleher stated words to the effect that "people high up" at DCAMM "feel they have been played," though refused to give specifics on what he was referring to.

### THE MOUNT WACHUSETT BID PROTEST

45.     On May 2, 2018, IFCC was determined to be low bidder on the Mount Wachusett Community College ("MWCC") MLT Classroom Renovation Project.

46.     MWCC declined to award the contract for the MLT Classroom Renovation Project to IFCC.

47.     Pursuant to M.G.L. c. 149, § 44H, IFCC requested the Massachusetts Attorney General determine that MWCC's decision was in violation of the Massachusetts public bid laws.

48.     The Massachusetts Attorney General's office published a decision to the effect that MWCC lawfully declined to award the contract to IFCC on grounds of "responsibility" (as that term is used and defined in M.G.L. c. 149, § 44(a)(1)), based upon MWCC's architect's discussions with owners of certain projects previously completed by IFCC.

49.     The MWCC decision quoted or paraphrased these owners alleged adverse statements concerning contentious relationships with IFCC.

50.     In the Summer of 2019, IFCC learned that the MWCC bid protest decision was being disseminated to municipal and agency procurement personnel.

51.     After the May 2, 2018 MWCC bid protest decision and the apparent dissemination thereof, at least two awarding authorities refused to award contracts to IFCC.

## THE LEMUEL SHATTUCK BID

52.     In May of 2019, IFCC submitted a bid directly to DCAMM for the project known and referred to as the Anti-Ligature Upgrades Project at the Lemuel Shattuck Hospital and was the low bidder.

53.     On May 13, 2019, DCAMM Deputy Commissioner of Design & Construction, Jay Mitchell, wrote to IFCC and concluded: "IFCC is not a responsible bidder on this project," referencing the Hurley Evaluation and general adverse statements concerning IFCC made by unidentified persons.

54.     On June 19, 2019, Mr. Magliozzi met with Mr. Mitchell and DCAMM Attorney Ryan Moore to discuss what they told by the unidentified third parties, and Mr. Mitchell failed and refused to furnish any further information.

## THE UMASS LOWELL EVALUATION

55.     In 2018 and 2019 IFCC performed a contract for the University of Massachusetts – Lowell called the Alumni Hall Renovation Project (the "UMass Project").

56.     On or about June 11, 2019, after the UMass Project was substantially complete, UMass Project Manager Cynthia Sylvester submitted a failing evaluation of IFCC (the "UMass Evaluation").

57.     By letter dated June 21, 2019, IFCC rebutted the UMass Evaluation (the "UMass Rebuttal") and proceeded to file suit in state court against UMass to collect amounts due and owing.  This suit was eventually settled.

58.     For the reasons stated in the UMass Rebuttal, the Defendants should have disregarded the UMass Evaluation as unreliable in assessing IFCC's applications for a Certificate of Eligibility.

## THE TUPELO EVALUATION AND THE MARCH 2019 APPLICATION

59.     On or about December 1, 2014, IFCC entered into a Prime Construction Agreement (the "Tupelo Contract") with the 60 Tupelo Realty Trust u/d/t dated March 21, 2007 c/o Michael G. Lynch, Morrissey, Hawkins & Lynch, as Trustee for the erection, alteration, repair or removal of a building, structure or other improvement to real property on a lot of land or other interest in real property located at 60 Tupelo Road, Swampscott, MA (the "Tupelo Project").

60.     The original value of the Tupelo Contract was $1,200,000.00, reduced to $1,171,182.12 after a deductive change order.

61.     Upon information and belief, the beneficiary of the 60 Tupelo Road Trust was Cynthia Kostinden.

62.     Cynthia Kostinden is the wife of IFCC employee Thomas V. Kostinden.

63.     The Tupelo Project was a legitimate arms-length transaction.

64.     IFCC recorded a mechanic's lien on the title to 60 Tupelo Road during construction.

65.     IFCC discharged its obligations under said Tupelo Contract and was paid $1,171,182.12.

66.     IFCC listed the Tupelo Project under prior project experience on its first application for a Certificate of Eligibility in 2016.

67.    Upon information and belief, one or more of the Defendants, or someone on their behalf, sent a request for a project evaluation to Cynthia Kostinden on April 12, 2016.

68.    The project evaluation was returned to DCAMM on or about April 18, 2016 (the "Original Tupelo Evaluation").

69.    In March 2019, IFCC submitted its annual application to renew its Certificate of Eligibility (the "March 2019 Application").

70.    In connection with the March 2019 Application, Rick Magliozzi noticed Cynthia Kostinden's name spelled with a "C" instead of a "K" on IFCC' spreadsheet of prior projects.  Mr. Magliozzi corrected the misspelling before submitting the March 2019 Application to DCAMM.

71.    By email on June 19, 2019, Defendant Kathleen Twomey inquired about the Original Tupelo evaluation, asking whether IFCC had any affiliation with Thomas Kostinden, and asking why Cynthia Kostinden's name is spelled with a "C" instead of a "K" on the spreadsheets of past projects submitted from 2016 through 2018, and on the signature line of the evaluation.

72.    Upon receipt of Ms. Twomey's June 19, 2019 email, IFCC withdrew its then-pending application for a Certificate of Eligibility.

73.    IFCC's most recent Certificate of Eligibility expired on June 26, 2019.

74.    On September 13, 2019, IFCC wrote to Defendant Twomey responding to the inquiries in her email of June 19, 2019, stating, in part, that "In consulting with Mr. Kostinden about the Tupelo evaluation, he tells me that either he or someone on his behalf filled out the [evaluation]... When I noticed the misspelling, I actually corrected it. Perhaps I should have reviewed the evaluation prior to it having been sent into DCAMM but I did not do so and apologize for this oversight."

75.    On September 16, 2019, Cynthia Kostinden signed a replacement evaluation for the Tupelo project in Mr. Magliozzi's presence (the "Replacement Tupelo Evaluation"), ratifying the ratings on the Original Tupelo Evaluation. That same day, Mr. Magliozzi forwarded the Replacement Tupelo Evaluation with a letter explaining that Cynthia Kostinden signed it in his presence.

## THE SEPTEMBER 2019 APPLICATION

76.    On September 17, 2019, IFCC submitted to DCAMM an application for a Certificate of Eligibility (the "September 2019 Application").

77.    On December 30, 2019, Defendant Matthew Ryan issued a final determination denying IFCC's September 2019 Application (the "2019 Denial of Certification") pursuant to 810 C.M.R. 4.04(6) and (8)(e).

78.    810 C.M.R. 4.04(6) provides:

A Contractor must provide complete and accurate answers to all questions in the application for certification and Update Statement and all other information and documentation required by DCAM for certification. Providing false or misleading information or failure to provide all required information will be considered grounds for denial, decertification and/or debarment. The owner and/or the person representing the owner in submitting the application must verify the accuracy of all information submitted on the application and must verify that the information submitted is in fact accurate and true, under oath. Failure to provide accurate information to regulatory authorities, legal counsel, accountants or any other party with whom a Contractor does business may be grounds for denial and debarment.

79.    810 C.M.R. 4.04(8)(e) provides:

Any of the following that occurred within the past five years shall constitute cause for decertification or denial of certification:  …willfully supplying materially false information incident to obtaining or attempting to obtain or performing any public contract or subcontract.

80.    The 2019 Denial of Certification specifically concludes:

a.    The Original Tupelo Evaluation was "forged" and "fraudulent";

    b.  IFCC was involved in the preparation of the Original Tupelo Evaluation;

    c.  The Original Tupelo Evaluation was submitted by IFCC or someone on its behalf; and

    d.  IFCC willfully supplied materially false information to obtain certification to bid on public work.

81.    The 2019 Denial of Certification suggested DCAMM would also exercise its discretion to rely on two failing evaluations (the Hurley Evaluation and the UMass Lowell Evaluation) as a basis for denial of IFCC's application.

82.    The 2019 Denial of Certification stated "IFCC must wait a minimum of one (1) year from the date of DCAMM's Final Determination to Deny before reapplying for DCAMM certification. As such, the period of denial shall be December 30, 2019 to December 29, 2020."

83.    IFCC objected to the 2019 Denial of Certification by letter dated January 3, 2020, but otherwise did not take action in connection with the 2019 Denial of Certification.

84.    On or shortly after January 2020, DCAMM published on its website a notice to the general public that IFCC had been "decertified," a mischaracterization. This publication labeling IFCC as "decertified" remained on DCAMM's website until approximately February 4, 2022. Since approximately February 4, 2022, DCAMM has moved IFCC to the "Denied Certification" category where IFCC (the only contractor listed) remains to this day.

## THE MALDEN EVALUATIONS

85.    On June 11, 2019, before IFCC's last Certificate of Eligibility expired, IFCC entered two contracts with the Massachusetts Office of Court Management ("OCM") for projects known as the "First Floor Egress Project" and the "Envelope Upgrades Project" (collectively, the "Malden Projects").

86.     The Malden Projects were beset by owner-ordered work stoppages, owner-requested time extensions unrelated to IFCC, owner-directed changes, and delays relating to the COVID-19 pandemic.  Nonetheless, the Malden Projects were certified by the project architect as complete and accepted on July 14, 2020, within the contract time as extended by OCM.

87.     In February 2020, at a time when both Malden Projects were more than 90% complete, Kim Plunkett, the person managing the Malden Projects for OCM, submitted an evaluation to a separate project owner to whom IFCC was bidding, stating that IFCC's performance in various categories was satisfactory.

88.     On March 25, 2021, 254 days after the projects were certified as accepted and complete, and during the pendency of IFCC's 2021 Application (discussed below), Ms. Plunkett submitted to one or more of the Defendants, or someone representing DCAMM, evaluations of IFCC's performance on the Malden Projects ("the Malden Evaluations").

89.     Both of the Malden Evaluations assign the identical failing score of 44.

90.     Both of the Malden Evaluations are rife with absurdly low numerical scores having no nexus to reality or to the facts offered in the evaluations as a basis for the incredibly low scores.

91.     Upon information and belief, Ms. Plunkett submitted the Malden Evaluations knowing that they contained false representations concerning IFCC's performance on the Malden Projects, intending that the Malden Evaluations would provide grounds for DCAMM to deny IFCC's applications for certification through the year 2025.

92.     Upon information and belief, one or more of the Defendants solicited failing evaluations from Ms. Plunkett, intending that the failing Malden Evaluations would provide grounds for DCAMM to deny IFCC's applications for certification through the year 2025.

93.     By letters dated March 31, 2021, IFCC rebutted the Malden Evaluations (the "Malden Rebuttals").

94.     For the reasons stated in the Malden Rebuttals, the Malden Evaluations should have been disregarded by the Defendants as unreliable.

## THE 2021 APPLICATION

95.     IFCC submitted another application for certification on February 17, 2021 (the "2021 Application"), as permitted by Defendant Ryan's December 30, 2019 Final Determination letter.

96.     On March 25, 2021, Ms. Plunkett submitted the Malden Evaluations.

97.     On May 3, 2021, Defendant Ryan issued a Preliminary Determination to Deny Certificate of Eligibility (the "Preliminary Determination").

98.     The Preliminary Determination communicated DCAMM's intent to deny IFCC's application for a Certificate of Eligibility based upon the Original Tupelo Evaluation and the four failing project evaluations (UMass, Hurley, and the Malden Evaluations).

99.     On May 5, 2021, IFCC objected to the Preliminary Determination in writing, requested reconsideration, and requested a meeting to discuss the matter (the "Request for Reconsideration").

100.    On May 20, 2021, IFCC President Rick Magliozzi and IFCC's undersigned counsel met via Zoom videoconference with counsel for DCAMM and Defendants Kathleen Twomey and Charles Kelsey.  At the May 20, 2021 meeting, IFCC requested DCAMM's position as to when the Original Tupelo Evaluation would cease to be considered grounds for denial of IFCC's applications for certification. At that time DCAMM failed and refused to

provide an answer to that question.  In fact, no substantive questions were asked or answered by DCAMM at the meeting.

101.    IFCC submitted additional information and renewed its request for reconsideration by letter dated May 28, 2021 (the "Supplemental Request for Reconsideration").

102.    On August 4, 2021, Defendant Ryan issued a Final Determination to Deny Prime Certificate of Eligibility (the "2021 Final Determination").

103.    The 2021 Final Determination denies IFCC's application again under 810 4.04(6) and (8)(e) for providing "false and misleading information" and incorporating the statements in the 2019 Denial of Certification, stating: "See full discussion of the 60 Tupelo Road Evaluation in the Final Determination to Deny Certification to IFCC, dated December 30, 2019."

104.    The 2021 Final Determination also denies IFCC's application pursuant to the bright-line rule at 810 C.M.R. 4.04(8)(a), for having received three or more project ratings with scores under 80 during the prior five years.

105.    The 2021 Final Determination was issued and signed by Defendant Ryan, and upon information and belief was issued at the direction of Ms. Twomey, Mr. Kelsey, and/or Ms. Gladstone.

106.    On August 6, 2021, IFCC, through counsel, availed itself of the so-called "appeal" of the 2021 Final Determination, by notice to the Office of the Attorney General ("OAG").

107.    In connection with IFCC's appeal to the OAG, DCAMM asserted the following in writing:

> a.  That DCAMM has discretion to determine how long to deny certification on account of fraud or misrepresentation;

b. It is DCAMM's policy to consider fraudulent actions for a period of five (5) years from the date of the discovery of the fraud;

c. DCAMM chooses to consider the Original Tupelo Evaluation as a reason to deny IFCC's applications for certification through at least 2023;

d. The existence of three failing evaluations during the prior five years will mandate a denial of IFCC's applications for certification through 2024.

108.    The OAG held a telephone conference concerning IFCC's appeal on August 25, 2021.  Assistant Attorney General Deborah Anderson, Rick Magliozzi, counsel for IFCC, and counsel for DCAMM participated in this call.

109.    Counsel for DCAMM and IFCC were permitted to provide statements to the OAG on said conference call.  AAG Deborah Anderson specifically instructed all parties at the beginning of said conference call that there would be no questioning or cross-examination allowed.  The parties submitted post-conference memoranda.

110.    On September 15, 2021, the OAG issued a decision denying IFCC's appeal under M.G.L. c. 149, § 44D.

## GENERAL ALLEGATIONS

111.    801 C.M.R. 4.04(8)(a) -- establishing a numerical bright line rule, using an imperfect and questionable measurement tool, to mandate denial of an application for a Certificate of Eligibility -- mandates deprivation of persons' liberty interest in the opportunity to bid on public contracts without due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

112.    810 C.M.R. 4.04(8)(e) -- mandating denial of an application for a Certificate of Eligibility based upon any act DCAMM deems to constitute willful supply of materially false information, with no recourse to meaningful process -- mandates deprivation of persons' liberty

interest in the opportunity to bid on public contracts without due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

113.    The Defendants took the actions described herein to impose an actual and/or de facto debarment of IFCC without affording IFCC due process of law.

114.    The Defendants have and continue to utilize the Original Tupelo Evaluation as a means to impose what amounts to a multi-year debarment on purported grounds of fraud and dishonesty while circumventing the process delineated in M.G.L. c. 29, § 29F and denying IFCC due process of law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

115.    IFCC is required to disclose its DCAMM denials of certification to other prospective project owners including on certain private and government owners' bid forms and prequalification forms; Upon information and belief, this is and was at all relevant times known to the Defendants.

116.    The Defendants' conduct does in fact, and was intended to interfere with IFCC's ability to contract with other project owners, public and private.

117.    The conduct attributed DCAMM herein was, in each instance, perpetrated by the Defendants, acting alone or in concert.

118.    IFCC has satisfied all conditions precedent to the maintenance of this action.

**COUNT I**
**42 U.S.C. § 1983, Declaratory Judgment and Injunction**
**Denial of Liberty Interest Without Due Process of Law**

119.    Plaintiff incorporates by reference the allegations of all prior paragraphs of this complaint as if recited herein.

120.    Plaintiff has a liberty interest in bidding and working on contracts for the Commonwealth of Massachusetts and its agencies and municipalities.

121.    Whereas IFCC has been denied that interest and stands threatened to be denied that interest through 2025 notwithstanding its right to apply for a Certificate of Eligibility in the interim, an actual controversy exists and meaningful relief will be afforded by the Court's declaration.

122.    The acts described herein are committed by the Defendants under color of state law and have deprived, and will continue to deprive, Plaintiff of its liberty interests without the due process guaranteed by the Fourteenth Amendment to the United States Constitution.

123.    Plaintiff's ability to bid on public contracts has been, and will continue to be, impaired by the continued denial of their due process rights.

124.    Plaintiff will suffer an erroneous deprivation of rights unless its due process rights are restored.

WHEREFORE, the Plaintiff requests this Court grant the following relief:

(a) Issue declaratory judgment pursuant to 28 U.S.C. 2201(a), declaring the Defendants' application of M.G.L. c. 149, § 44D and the regulations promulgated thereunder was and continues to be unconstitutional in violation of IFCC's right to due process of law;

(b) Enjoin Defendants from hereafter directly or indirectly causing Plaintiff to be debarred or be denied a Certificate of Eligibility on the basis of having a specific number of so-called "failing" project evaluations without process that satisfies the requirements of the Fifth and Fourteenth Amendments to the United States Constitution, namely the process called for by M.G.L. c. 29, § 29F or similar procedures;

(c) Enjoin Defendants from hereafter directly or indirectly causing Plaintiff to be debarred or be denied a Certificate of Eligibility on the basis of the Original Tupelo Evaluation without process that satisfies the requirements of the Fifth and Fourteenth Amendments to the United States Constitution, namely the process called for by M.G.L. c. 29, § 29F or similar procedures;

(d) Award Plaintiff its costs and attorneys' fees; and

(e) Grant such other relief as this Court deems equitable, just, and appropriate.

## COUNT II
### Declaratory Judgment and Injunction
### Facial Infringement of Due Process Rights - M.G.L. c. 149, § 44D

125.    Plaintiff incorporates by reference the allegations of all prior paragraphs of this complaint as if recited herein.

126.    Plaintiff and all other contractors and individuals have a liberty in bidding and performing public contracts for the Commonwealth and its agencies and municipalities.

127.    Whereas IFCC has been denied that interest and stands threatened to be denied that interest through 2025 notwithstanding its right to apply for a Certificate of Eligibility in the interim, an actual controversy exists and meaningful relief will be afforded by the Court's declaration.

128.    M.G.L. c. 149, § 44D and the regulations promulgated thereunder, including 810 C.M.R. 4.04(8)(e), as written, mandate the denial of Plaintiff's (and similarly situated persons') liberty interest in bidding public contracts on grounds of purported fraud or dishonesty without due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

129.    M.G.L. c. 149, § 44D and the regulations promulgated thereunder, including 810 C.M.R. 4.04(8)(a), establish numerical bright line rules, using an imperfect and questionable measurement tool, to mandate deprivation of persons' liberty interest in the opportunity to bid on public contracts without due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, the Plaintiff requests this Court: (a) issue declaratory judgment pursuant to 28 U.S.C. 2201(a), declaring M.G.L. c. 149, § 44D and the regulations promulgated thereunder to be unconstitutional to the extent they mandate denial of a person's application for a Certificate of Eligibility either without recourse to meaningful hearing or appeal, or on the basis of a bright line cutoff based upon project evaluations; (b) permanently enjoin the Defendants from enforcing any statute or regulation determined by this Court to be in violation of the United States Constitution; and (c) grant any other relief this court deems just and equitable.

## JURY DEMAND

The Plaintiff demands a jury trial on all counts so triable.

Respectfully Submitted,

INTEGRATED FACILITIES
CONSTRUCTION CORP.
By its attorney,

Dated:  September 29, 2022

_/s/Scott K. Semple_____
Scott K. Semple, Esq. BBO# 673229
*sksemple@dgslawllp.com*
DAVAGIAN GRILLO & SEMPLE LLP
365 Boston Post Road, Suite 200
Sudbury, MA 01776
t: 978-443-3773
f: 978-443-7773

## <u>Certificate of Service</u>

I, Scott K. Semple certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non registered participants on September 29, 2022.

/s/ <u>*Scott K. Semple*</u>
Scott K. Semple
